| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |

------------------------------------------------------- x
*In re:*                                                :
                                                        :    Chapter 7
William F. Nicklin,                                     :    Case No. 19-35092
                                                        :
                                       *Debtor*         :
------------------------------------------------------- x

## MEMORANDUM DECISION

**A P P E A R A N C E S :**

*Special Counsel to Daniel J. Ventricelli, as Trustee of the Estate of William F. Nicklin, Debtor*
BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP
299 Park Avenue
New York, New York 10171
         By: Alec P. Ostrow

*Attorneys for C.L. King and Associates, Inc.*
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
         By: Edward M. Fox

*Utility Service Holding Co., Inc*
ZEISLER & ZEISLER
10 Middle Street, 15th Floor
         By: Aaron A. Romney

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the Chapter 7 Trustee's (the "Trustee") Motion for Summary Judgment Disallowing the Claim of Utility Services Holding Co., Inc. Claim No. 3 (the "Motion"). On November of 2023, the Chapter 7 Trustee and Utility Services Holding Co., Inc. (the "Creditor") entered into a stipulation establishing a procedure for objecting to the claim of the Creditor. The procedure provided that the claim objection would come in the form of a motion for summary judgment pursuant to the Federal Rules of Bankruptcy Procedure 3007, 7056, and 9014. The Trustee argues that he is entitled to summary judgment for several reasons.

The Trustee contends that the post-bar date amendment of the claim improperly adds new legal theories and cannot contradict Rule 2004 testimony that was taken prior to the amendment; that Claim No. 3 (the "Claim") is barred by the statute of limitations; and that the events that gave rise to the claim do not entitle USHC relief.  USHC argues that the Claim relates back to the original proof of claim filing; that the Claim is not barred by the statute of limitations, and that the events that gave rise to the Claim constitute a common law breach of fiduciary duty. For the reasons set forth below, the Motion for Summary Judgment is granted.

## Jurisdiction

This Court has jurisdiction over this contested matter under 28 U.S.C. § 157, 28 U.S.C. § 1334 and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and one over which this Court has authority to enter a final judgment.

## Background

William F. Nicklin ("Debtor") filed a Chapter 7 petition with this Court on January 18, 2019. Voluntary Pet., ECF No. 1.  Debtor is a highly sophisticated investment advisor and securities trader, currently employe by Circle N. Advisors, LLC.  He was the manager of NSB Advisors LLC ("NSB"), who has a confirmed chapter 11 case[1] in this Court.  NSB was a closely held investment advisory business managed by Debtor.  C.L. King & Associates, Inc. ("C.L. King") was the custodian and broker of NSB.  C.L. King also served as the margin lender to NSB's customers.  Prior to joining NSB, Debtor was a broker at Brown Advisory Securities, LLC ("Brown").  Trustee's Statement ¶ 7, ECF No. 269.  In June of 2008, USHC became a customer of Brown with an initial investment of $100 million.  USHC Statement ¶ 7, ECF No.

---

[1] Case No. 15-35009 (CGM) was filed on January 5, 2015, and the Chapter 11 Plan was confirmed on December 4, 2015.  The Final Decree was issued on August 2, 2021.

297.  When NSB was established in 2009 and retained Debtor for employment, USHC moved its account to NSB.  *Id. ¶* 8.

USHC signed investment advisory agreements with NSB on June 30, 2009 and January 30, 2011.  *Id.* ¶ 9.  Disclosure brochures accompanied the agreements which outlined NSB's investment strategy (the "Strategy").  USHC Statement ¶ 11, ECF No. 297.  The brochure explains that the Strategy involves holding concentrated positions in illiquid securities that carry the additional risk of being difficult to sell in a thinly traded market.  The brochure describes the risks associated with trading options.  Specifically, it explained that the Strategy involves short call strategies that require the use of a margin account and the possibility that clients, such as USHC, will be subjected to house or Federal Reserve calls as the result of the investment activities of NSB.

Pursuant to the investment strategy, USHC was required to post cash or securities to be held as collateral by C.L. King., the custodian of the account and margin lender. C.L. King determined the amount of value it would attribute to stocks held by USHC as collateral for the options. In the event the value C.L. King attributed to the collateral was less than an unrealized loss on a short call option, C.L. King had the right to issue a call for the account holder to add cash or securities to bring the value of the account up to the amount required by C.L. King. This is known as a "House Call."  Making a House Call is within the discretion of the broker-dealer. Similarly, the Financial Industry Regulatory Authority ("FINRA") imposes its own margin requirements that are typically lower than broker-dealer requirements. When FINRA makes a call, it must be satisfied within a specific amount of time, without exception. This is known as an "Exchange Call."

The USHC account's largest holding was that of APCO Oil & Gas International, Inc. ("APCO"), an Argentinian oil company. USHC Statement ¶ 22, ECF No. 297. Between December 31, 2011 and April 30, 2012, the share price of APCO fell and resulted in the decline of the value of the APCO position from $11,104,877.60 to $57,621,681. *Id.* The share price of PMFG, another position held by the USHC account, also fell and resulted in the decline of the value of the position from $31,181,038.08 to $21,118,940.08. *Id.* On March 7, 2012, in an email to Mr. Cummings, Debtor asked "[i]s there any chance you can get the $18 million back into the account soon (more if possible)." Ostrow Decl., Ex. 12, ECF No. 266.

The losses realized between December 2011 and April 2012 and trades made thereafter resulted in a House Call in the USHC account. USHC contends that Debtor concealed the existence of the House Call and misrepresented the health of the account, beginning on February 9, 2012. USHC Statement ¶ 42, ECF No. 297. USHC argues that the concealment of the consequences of the trade lost it the opportunity to liquidate its positions in its account before more damage was realized. *Id.*

USHC initiated arbitration with Debtor, NSB, and C.L. King on or around February 3, 2014. Trustee's Mem. 12, ECF No. 268. The arbitration was ultimately withdrawn because USHC had no arbitration agreement with Debtor nor NSB. In an agreement (the "Tolling Agreement"), Debtor and USHC agreed to toll the applicable statute of limitations so that the issues between them could be address at a later time. The effective date of the Tolling Agreement was February 3, 2014 and ran through December 13, 2016, a period of two years, ten months, and eleven days. Ostrow Decl., Ex. 8, ECF No. 266.

On January 18, 2019, Debtor filed this voluntary petition. Vol. Pet., ECF No. 1. On May 6, 2019, USHC filed Proof of Claim No. 3 in the amount of $42,617,804. The basis for the claim provided:

> is the debtor's breach of his fiduciary duties to USHC which include, but are not limited to, such dishonest, intentional, or improper conduct as the debtor's failure to disclose material facts to USHC, the debtor's breach of his duty of loyalty to USHC, the debtor's breach of his duty to act with the utmost good faith in his dealings with USHC, and the mishandling of USHC's investment account.

Claim 3-1. Exhibit B of the claim provided that the figure was based on complete liquidation of the USHC Account beginning on February 10, 2012. Following a Fed. R. Bankr. P. Rule 2004 investigation and an informal examination of the Debtor, USHC filed an amended claim which expanded the basis of the claim to seventeen paragraphs, adding specific facts and allegations. *See* Proof of Claim 3-2.

The Trustee argues that summary judgment must be granted and the Claim disallowed for several reasons: the post-bar date amendment of the claim improperly adds new legal theories and cannot contradict Rule 2004 testimony that was taken prior to the amendment; that the claim itself is barred by the statute of limitations of the state of New York; and that the events that gave rise to the claim do not entitle USHC relief. USHC argues that the Claim relates back to the original proof of claim filing; that the claim is not barred by the statute of limitations as the Georgia statute of limitations applies, and that the events that gave rise to the claim constitute a common law breach of fiduciary duty.

## Discussion

A claim filed in accordance with Fed. R. Bankr. P. 3001(f) constitute prima facie evidence of the claim and the claim is deemed allowed unless an objection is filed. Fed. R. Bankr. P. 3001(f). Once a Trustee files an objection to a creditor's proof of claim, the validity of

the claim becomes a contested matter. *In re Gilbreath*, 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008) (citations omitted).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (internal quotations omitted). Once the moving party has properly supported its motion with such evidence, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *First Nat'l Bank of Arizona v. Cities Servs. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Fed. R. Civ. P. 56(e). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the opponent of the motion. All reasonable doubts and inferences should be resolved in favor of the opponent." *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir.1985) (citations omitted).

<u>The Post Bar Date Amendment</u>

The Trustee argues in his papers that the new legal theories set forth in the amendment of Claim No. 3 should not be allowed, and the facts presented that contradict the USHC principal's

Rule 2004 testimony should not be permitted. Trustee's Mem. 18, ECF No. 268. The Trustee states that the new theory of recovery set forth in the amendment cannot avail itself as a new theory of recovery because there are no facts set forth in the original claim, only "accusations with labels and conclusions." *Id.* The Trustee argues that it would be inequitable to allow the amended claim when facts set forth in that amendment contradict the deposition testimony of USHC's principal as it would "greatly diminish and make a sham out of an important investigative tool that assists the Trustee in the administration of the bankruptcy case." *Id.*

USHC argues that the Trustee's objection to the timing of the amendment is baseless as the amendment clearly relates back to the originally filed proof of claim and simply describes the claim in greater particularity. USHC argues that its original claim met the requirements to establish a prima facie proof of claim under Fed. R. Bankr. P. 3001(a) as it provided the basic facts.

In the Second Circuit, amendments to claim following the bar-date are subject to a two-part inquiry. First, Courts consider "whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005). The claim is considered to be sufficiently similar when the amendment "corrects a defect of form in the original claim, describes the original claim with greater particularity, or pleads a new theory of recovery on the facts set forth in the original claim." *Id.* (citing *In re McLean Indus., Inc.*, 121 B.R. 704, 707 (Bankr. S.D.N.Y. 1990). Second, Courts determine whether it would be equitable to allow the amendment. Courts consider whether debtor or other creditors would be unduly prejudiced by the amendment, whether other creditors would receive a windfall from the disallowance of the amendment, and whether the late claimant acted in good faith and the delay was justified. *Id.*

The amendment is proper.  On May 6, 2019, USHC filed a proof of claim that asserted its intention to hold the estate liable for Debtor's breach of fiduciary duty.  In the original claim, USHC generally stated the conduct that gave rise to the claim:

> dishonest, intentional, or improper conduct as the debtor's failure to disclose material facts to USHC, the debtor's breach of his duty of loyalty to USHC, the debtor's breach of his duty to act with the utmost good faith in his dealings with USHC, and the mishandling of USHC's investment account.

Claim 3-1.  The amendment to the claim did not set forth a theory of recovery beyond that explicitly stated or implied by the original proof of claim, it only provided the particular facts that the original claim omitted, which is a permissible use of an amendment.  *See In re Cinecom Corp.,* 73 B 40 (Bankr. S.D.N.Y. 1980) (stating that material omissions may be cured by amendment).

As to the consideration of equity, the Trustee has not argued that any other creditors would be unduly prejudiced by the amendment or that USHC acted in bad faith.   The Trustee's concern that the facts set forth in the amended claim contradict the Rule 2004 testimony of USHC's principal goes to the substance of the proof of claim. Whether the content of the amendment contradicts Rule 2004 testimony is not a basis available to this Court to determine that the amendment was inequitable and thus improper.

Statute of Limitations

"[W]here no significant federal policy, calling for the imposition of a federal conflicts rule, exists," *Bianco v. Erkins (In re Gaston & Snow),* 243 F.3d 599, 607 (2d Cir.2001), a bankruptcy court must apply the choice of law rules of the forum state. *Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP),* 673 F.3d 180, 186 (2d Cir.2012).  Under New York law, "the first step in any case presenting a potential choice of law issue is to determine whether

there is an actual conflict between the laws of the jurisdictions involved." *GlobalNet Financial.com, Inc v. Frank Crystal & Co.,* 449 F.3d 377, 382 (2d Cir.2006) (internal quotation marks omitted).  Here, the parties agree that the statute of limitations in Georgia and the statute of limitations in New York conflict.

New York's borrowing statute, N.Y. C.P.L.R. § 202, guards against forum shopping by out-of-state plaintiffs by mandating that the cause of action be timely under the limitations periods of both New York and the jurisdiction where the cause of action accrued, essentially mandating the use of the shortest statute of limitations available.  *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999).  N.Y. C.P.L.R provides:

> An action based on a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

As provided by the statute, if New York's statute of limitations is shorter than the statute of limitations of the place where the cause of action accrued, New York courts should apply the local rule; if the foreign statute of limitations is shorter, then that is what controls.

The statute of limitations in Georgia for fraud or breach of fiduciary duty that causes economic injury or damage to personalty is four years from the date of accrual.  *See* Ga. Code Ann. § 9-3-21. The statute of limitations in New York for breach of fiduciary duty is based on the substantive remedy sought by the Plaintiff.  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y. 3d 132, 139.  "Where the remedy sought is purely monetary in nature, courts construe the suit as alleging "injury to property" within the meaning of CPLR 214 (4), which has a three-year limitations period.  *Id.* (*citing Yatter v Morris Agency*, 256 AD2d 260, 261 (1998)). The New York statute of limitations period applies.

"Where an allegation of fraud is essential to a breach of fiduciary duty claim, [New York] courts have applied a six-year statute of limitations under CPLR 213 (8)." *Id.* (citing *Kaufman v Cohen*, 307 AD2d 113, 119 (2003)). "When a fraud claim is incidental to another asserted claim, the claim does not sound in fraud for purposes of taking advantage of the longer limitations period." *Corcoran v. New York Power Authority*, 202 F.3d 530, 545 (2d Cir. 1999). "A fraud action is [essential] only when: (1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are distinct from the injuries caused by the alternate claim." *Id.* (citing *Harkin v. Culleton*, 156 A.D.2d 19, (1st Dep't 1990)).

Here, USHC is seeking damages in the amount of $42,617,804.00 for losses that are alleged to have resulted from Debtor breaching his fiduciary duties to USHC when Debtor made trades that negatively affected the USHC account that were not in USHC's best interest. In the amended proof of claim, USHC alleges Debtor concealed and misrepresented information that led to USHC's losses. Debtor's alleged concealments and misrepresentations regarded the margin call waived by C.L. King, the condition that the USHC account was in, and the status and expected performance of the underlying stock. Each concealment and misrepresentation alleged is inextricably entwined with the breach of fiduciary duty claim. USHC, in its papers, even describes its claim to represent "fraudulent breaches of fiduciary duty." USHC's Mem. 44, ECF No. 296. In essence, USHC alleges that Debtor repeatedly breached his fiduciary duty to USHC, concealed those breaches, and misrepresented information that might have led to USHC's discovery of the breaches. Applying the test provided in *Harkin*, fraud is incidental to the breach of fiduciary duty claim as it did not occur separately and subsequently from the injury forming the basis of the breach of fiduciary duty claim nor were the caused by fraud distinct from the

19-35092-cgm    Doc 312    Filed 05/08/24    Entered 05/08/24 08:37:12    Main Document
Pg 11 of 12

injuries caused by the breach of fiduciary duty. The three-year New York statute of limitations for injury to property applies.

USHC argues that "the New York statute of limitations period should not apply when the defendant chose the forum because a defendant to a state-law claim may not 'use a device of federal law to choose both the forum and accompanying choice of law' in which that claim is adjudicated." USHC's Mem. 28, ECF No. 296 (cleaned up) (citing *Statek Corp. v. Dev. Specialists, Inc.* (*In re Coudert Bros. LLP*), 673 F.3d 180, 190 (2d Cir. 2012). USHC misunderstands the Second Circuits holding. In *Statek*, the claimant filed its complaint against the debtor in Connecticut before the proceeding was stayed due to the debtor's bankruptcy filing in the Southern District of New York. The bankruptcy court applied the choice of law rules of New York and held that the claim was barred by the statute of limitations as it was the shorter of the two, as we do here. *Id.* The Second Circuit vacated the bankruptcy court's holding, reasoning that it would be "fundamentally unfair . . . to deprive *Statek* of the state-law advantages adhering to the exercise of its venue privilege." *Id.* USHC did not initiate a lawsuit against Debtor in Georgia and thus cannot reap the benefit of the exception articulated by the Second Circuit in *Statek*.

USHC stated that it suffered losses on "any date selected between February 9, 2012 and May 14, 2012" and "the cause of action against Debtor accrued no earlier than May 14, 2012." USHC's Statement ¶ 51, ECF No. 297; USHC's Mem. 33, ECF No. 296. Utilizing the latest date injury is alleged to have occurred, the New York statute of limitations ran on this cause of action on May 14, 2015 but for the Tolling Agreement. The parties agree that the Tolling Agreement extended the statute of limitations for a period of two years, ten months, and eleven days. USHC's Mem. 33, ECF No. 296; Trustee's Mem. 12, ECF No. 268. The statute of

Page **11** of **12**

limitations run, with the Tolling Agreement's extension, on March 25, 2018.  Debtor filed this bankruptcy on January 18, 2019.  USHC failed to bring an action outside of this bankruptcy before the March 25, 2018 date.  The cause of action is barred by the statute of limitations.

As the claim is barred, the Court declines to address the remaining arguments for and against summary judgment, nor the merits of the claim itself.

## Conclusion

The Motion is granted and the claim is disallowed.  The Trustee shall submit an order consistent with this opinion.



**Dated: May 7, 2024**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
Hon. Cecelia G. Morris
U.S. Bankruptcy Judge